UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DAVID ROSADO,

          Plaintiff,

v.                                    Case No. 5:05-cv-166-Oc-10GRJ

GEORGIA-PACIFIC CORPORATION, FRED
JACKSON,

          Defendants.
_____

## REPORT AND RECOMMENDATION[1]

Pending before the Court is Plaintiff's Motion to Remand. (Doc. 5.) Defendants have filed a response in opposition (Doc. 7) and, accordingly, the matter is ripe for review. For the reasons discussed below, Plaintiff's Motion to Remand (Doc. 5) is due to be **DENIED**.

## I. BACKGROUND & FACTS

Georgia Pacific Corporation operates two engineered lumber products facilities located in Roxboro, North Carolina, and in Ocala, Florida.[2] Plaintiff, an Hispanic male,[3] was employed at the Ocala facility from April 1999 until his resignation in May 2004.[4] According to Plaintiff, from February 2003 through May 2004, he performed the duties

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] *See* Declaration of Michael O'Day, Doc. 7, Ex. C.

[3] *See* Complaint, Doc. 1.

[4] *See* Declaration of Michael O'Day, Doc. 7, Ex. C.

and had the responsibilities of a purchasing manager, but he was "improperly classified" as a store room manager and received a salary lower than that of a purchasing manager.[5] Plaintiff alleges that Georgia Pacific and Fred Jackson (Plaintiff's immediate supervisor at the Ocala facility) were aware of Plaintiff's situation, but did nothing about it.

Plaintiff filed this action in the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida, on June 14, 2004, alleging that Defendants intentionally discriminated against him because of his race by failing to provide equal pay for equal services, in violation of Florida's wage discrimination statute, Fla. Stat. 725.07. On April 8, 2005, Defendants removed the case to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§1332(a)(1) and 1446(b).[6] According to Defendants, it was not until March 9, 2005, when they received Plaintiff's response to their motion for fees and litigation expenses, that they first ascertained this case was removable.[7] In support of removal, Defendants maintain that Plaintiff has fraudulently joined Jackson, a non-diverse party, and in his absence this case should be heard in federal court based on its jurisdictional authority outlined at 28 U.S.C. §1332(a)(1).

Plaintiff argues that this matter should be remanded to state court because Defendants have failed to carry their heavy burden in proving that there is no possibility he can establish a cause of action against Jackson in state court. He contends that

---

[5] *See* Complaint, Doc. 1. The term "purchasing agent" is used interchangeably with "purchasing manager."

[6] *See* Notice of Removal, Doc. 1.

[7] Defendants' motion for attorneys' fees, and Plaintiff's response (which incorporates Plaintiff's motion for attorneys' fees) have been filed separately along with the Notice of Removal. *See* Doc. 1.

Defendants have in fact admitted that Jackson is a Florida citizen and have also admitted that there is a possibility that Jackson may be sued as an individual under Fla. Stat. §725.07. As to whether Jackson was a decision-maker with respect to Plaintiff's compensation, Plaintiff points to Georgia Pacific's answers to his first set of interrogatories wherein it stated that "Jackson is also involved in determining compensation for the Store Room Manager."[8]

Plaintiff further argues that Defendants have not proven that his claims exceed $75,000.00. He states that Defendants have admitted that he was paid at a pay grade 19 and earned an annual salary of $36,845.00 as a store room manager from February 2003 though May 2004. As the pay requested in his complaint was a pay grade 20, Plaintiff claims that "there is no possible way" that his compensatory damages could exceed $75,000.00. Furthermore, Plaintiff offered to settle this case in October 2004 for a mere $45.000.00,[9] and Defendants' consideration of punitive damages is irrelevant due to the speculative nature of such damages.

Finally, Plaintiff claims that he is entitled to attorneys' fees and expenses for being forced to respond to the removal petition. In addition to the grounds set forth above, which are also used to support his claim for fees, Plaintiff urges the Court to assess fees against Defendants for their "misuse" of the removal statutes. Plaintiff explains that Defendants filed a motion for summary judgment in state court on January 31, 2005, which incorporated arguments identical to those in support of its notice of

---

[8] *See* Doc. 5, Ex. 5, Interrogatory No. 7. Defendant Georgia Pacific served its responses upon Plaintiff on August 11, 2004.

[9] *See* Offer of Settlement, Doc. 5, Ex. 4.

removal. The hearing on their motion was set for April 1, 2005, but had to be rescheduled due to a conflict in the court's calendar. Plaintiff contends that instead of permitting their motion to be heard in state court in June, Defendants filed their notice of removal to circumvent the state court's denial of their motion and to shop their motion to a different forum. For this, Plaintiff asserts that sanctions are warranted under 28 U.S.C. §1447(c) and Rule 11 of the Federal Rules of Civil Procedure.

Defendants contend that the removal of this action is proper, and Plaintiff's motion to remand should therefore be denied. As to the fraudulent joinder issue, Defendants maintain that Jackson "simply was not responsible for the classification (or misclassification) and corresponding salary decision about which Plaintiff complains."[10] In support of this assertion, they offer various deposition transcripts and affidavits to show that: (1) Jackson is the local manager at the Ocala facility and reports to Michael O'Day, the area manager;[11] (2) During the first quarter of 2003, O'Day reclassified the hourly store room position then held by Plaintiff to a salaried position, and titled that position Store Room Manager;[12] (3) Jackson was not responsible for the reclassification of Plaintiff's position, the pay grade, or its pay structure. Rather, those decisions were left to O'Day;[13] and (4) O'Day has never authorized the implementation of the higher

---

[10] Defendants' memorandum, Doc. 7, p 4.

[11] Rosado Deposition, Doc. 7, Ex. A., p 66, Jackson Deposition, Doc. 7, Ex. B, p. 12, Declaration of Michael O'Day, Doc. 7, Ex. C.

[12] Doc. 7, Ex. B, p. 12, Declaration of Michael O'Day, Doc. 7, Ex. C, Jackson Deposition, Doc. 7, Ex. B, pp. 24, 26-27, 33.

[13] Jackson Deposition, Doc. 7, Ex. B, pp. 26-27, Rosado Deposition, Doc. 7, Ex. A., pp. 105-106, Declaration of Michael O'Day, Doc. 7, Ex. C.

pay grade positions of Purchasing Agent or Purchasing Manager at the Ocala facility.[14] In light of these "undisputed facts," Defendants maintain that Jackson has been fraudulently joined.

Defendants do not dispute Plaintiff's claim that Fla. Stat. §725.07 permits recovery against both individuals and corporate entities. Rather, they argue that "fact" is immaterial to the Court's determination of whether this matter was appropriately removed based on fraudulent joinder.[15]

With respect to the amount in controversy, Defendants claim that Plaintiff himself admitted in the course of his deposition that he believes he is entitled to $90,000.00 just for emotional harm and punitive damages.[16] Furthermore, they point out that Plaintiff seeks lost wages based on the difference between what he earned beginning in February 2003 and what he would have earned as a Purchasing Manager. According to O'Day, that position has a pay grade of 20, which authorizes an annual salary of up to $75,400.00.[17] Using this pay differential, Plaintiff's lost wages would approach $51,390.00. Moreover, according to Plaintiff's deposition testimony, he made $3,000.00 to $4,000.00 less per year at the position he accepted in his new employment after resigning from Georgia Pacific. Therefore, if he claims that his lost wages run through the date of trial (May 2005 was the earliest month for which this case could have gone to trial in state court), his lost wages following his resignation would increase by

---

[14] Jackson Deposition, Doc. 7, Ex. B, pp. 28-29; Declaration of Michael O'Day, Doc. 7, Ex. C.

[15] See Defendants' memorandum, Doc. 7 at p. 9.

[16] See Rosado Deposition, Doc. 7, Ex. A., p. 204.

[17] Declarations of Michael O'Day, Doc. 7, Exs. C & H.

$41,550.00 - making the total lost wages from the period covering February 2003 through May 2005 approximately $93,000.00.

## II. **DISCUSSION**

It is "by now axiomatic that the inferior federal courts are courts of limited jurisdiction," empowered "to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution and which have been entrusted to them by a jurisdictional grant authorized by Congress."[18] A defendant may "remove a case to federal court only if the district court could have had jurisdiction over the case had the case been brought there originally."[19] District courts have original jurisdiction over diversity cases, pursuant to 28 U.S.C. §1332, and over matters arising under federal law, pursuant to 28 U.S.C. §1331.[20]

Where a plaintiff has objected to a defendant's removal, the burden of proof is on the defendant, as the removing party, to show that the action was properly removed.[21] This burden can be an onerous one, as district courts construe removal statutes narrowly,[22] and are encouraged to resolve all doubts about jurisdiction in favor of remand to state court.[23]

---

[18] University of South Alabama v. The American Tobacco Company, 168 F.3d 405, 409 (11th Cir. 1999). *Citing* Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir.1994).

[19] Whitt v. Sherman International Corp., 147 F.3d 1325, 1329 (11th Cir. 1998).

[20] *Id.*

[21] Woods v. Firestone Tire & Rubber Co., 560 F.Supp. 588, 590 (S.D.Fla. 1983).

[22] *See* Burns v. Windsor Insurance Co., 31 F. 3d 1092, 1095 (11th Cir. 1994).

[23] *See* University of South Alabama at 411. ("A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter
(continued...)

***Timeliness***

The procedure for removal is outlined at 28 U.S.C. §1446. In part, the statute requires removal "within thirty days after the receipt by the defendant ... of a copy of the initial pleading setting forth the claim upon which such action or proceeding is based."[24] However, if "the case stated by the initial pleading is not removable," the defendant must file a notice of removal "within thirty days after receipt by the defendant ... of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable."[25]

Here, Defendants removed this case about ten months after the complaint was served upon them. Therefore, they rely on 28 U.S.C. §1446(b) to support the timeliness of their motion. As such, Defendants advise that it was not until March 8, 2005, when they received Plaintiff's response to their motion for attorneys' fees and litigation expenses, that they ascertained that the case was removable on the grounds of fraudulent joinder.[26] Defendants state that "the absence of credible evidence or persuasive argument in Plaintiff's Response to Defendants' Fee Motion made clear that

---

[23](...continued)
jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts.")

[24] 28 U.S.C. §1446(b).

[25] *Id.*

[26] Of course, this would qualify as "other paper" under the removal statute. *See* Wilson v. General Motors Corporation, 888 F. 2d 779 (11th Cir. 1989)(Response to request for admissions may be considered "other paper" under the removal statute); Golden Apple Management Co., Inc. v. Geac Computers, Inc., 990 F. Supp. 1364 (M.D. Ala. 1998)(Settlement negotiation letter served but not filed may be considered "other paper" under the removal statute); Lee v. Altamil Corporation, 457 F. Supp. 979 (N.D. Fla. 1978)("It is well settled that discovery documents may be considered other papers within the meaning of 28 U.S.C. §1446(b).")

Plaintiff could not possibly prove a cause of action against the non-diverse individual defendant."[27]

Reserving its discussion on the merits of the fraudulent joinder issue at this juncture, the Court has reviewed Plaintiff's response to Defendants' motion for attorneys' fees and Plaintiff's own motion for attorneys' fees (which is incorporated into his response), and finds that Plaintiff's response and motion present *identical arguments and evidentiary support* for its claims against Jackson as were presented in its response to Defendants' motion for partial summary judgment in state court.[28] Notably, Plaintiff's response to the motion for partial summary judgment was served upon Defendants on March 1, 2005 - 38 days before Defendants removed the case to this Court. Therefore, Defendants' contention that it was first put on notice of the lack of merit of Plaintiff's claims against Jackson on May 8, 2005, is somewhat suspect.

Notably, however, Plaintiff has not challenged the timeliness of removal in this instance. Rather, he has challenged Defendants' removal on two alternative grounds. First, he has argued that his claims against Jackson, a non-diverse defendant, *do* have merit, and therefore complete diversity does not exist in this matter. Second, he has argued that Defendants have failed to establish that the amount in controversy exceeds the $75,000.00 jurisdictional threshold. Because Plaintiff has not raised the issue of timeliness in his motion - or sought in other way to challenge the removal on timeliness

---

[27] Defendant's memorandum, p. 17, n. 19.

[28] Specifically, Plaintiff claims that Jackson was a decision-maker with respect to his compensation and relies on Defendants' answers to his first set of interrogatories and Plaintiff's affidavit.

8

grounds - the Court determines that Plaintiff has waived any objections to the timeliness of removal in this instance.[29]

### *Fraudulent Joinder*

Fraudulent joinder is a judicially-created doctrine that provides an exception to the requirement of complete diversity.[30] The Eleventh Circuit has recognized three situations in which fraudulent joinder arises.[31] The first is when there is no possibility that the plaintiff can prove a cause of action against the resident defendant.[32] The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts.[33] Finally, fraudulent joinder arises where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the

---

[29] *See* Kirby v. OMI Corp., 655 F. Supp. 219, 220 (M.D. Fla. 1987)("The thirty-day removal period is mandatory, absent a waiver by the party seeking remand.) *See Also* Loftin v. Rush, 767 F. 2d 800 (11th Cir. 1985)("Time limitation for removal is not jurisdictional but, rather, is modal or formal and may be waived.") *abrogated on other grounds by* Ariail Drug Co., Inc. v. Recomm Intern. Display, Inc., 122 F. 3d 930 (11th Cir. 1997); Smith v. Health Center of Lake City, Inc., 252 F. Supp. 2d 1336, 1339 (M. D. Fla., 2003) *Citing* Loftin. The Court recognizes those decisions which have found waiver only where a plaintiff has affirmatively taken some action vis-a-vis the removing party to forestall removal beyond the 30-day period. In such cases, the critical inquiry is whether the plaintiff's affirmative conduct, calculated to forestall removal, would make it unfair to grant plaintiff's subsequent request for remand on timeliness grounds. *See* Harris Corporation v. Kollsman, Inc., 97 F. Supp. 2d 1148, 1152 (M.D. Fla. 2000)("To silence plaintiff's timeliness objection, defendant must show that it reasonably relied to its detriment on plaintiff's representations that it would not object to removal on timeliness grounds. [...]. Plaintiff's representations must take the form of affirmative conduct or unequivocal assent of a sort which would render it offensive to fundamental principles of fairness to remand.") *Citing* Nicola Products Corp. v. Showart Kitchens, Inc., 682 F.Supp. 171, 172 (E.D.N.Y.1988) *and* Transport Indemnity Co. v. Financial Trust Co., 339 F.Supp. 405, 407 (C.D. Cal.1972). *See Also* Liebig v. DeJoy, 814 F. Supp. 1074, 1076 (M. D. Fla.1993). Because these cases involved the situation where the plaintiff had requested remand because removal was untimely the Court concludes that these cases are inapposite to the controversy at hand.

[30] Triggs v. John Crump Toyota, Inc., 154 F. 3d 1284, 1287 (11th Cir. 1998).

[31] *Id.*

[32] *Id. Citing* Coker v. Amoco Oil Co., 709 F. 2d 1433, 1440 (11th Cir. 1983), *superceded by statute on other grounds, see* Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F. 2d 1533 (11th Cir. 1993).

[33] Triggs at 1287 *citing* Coker at 1440.

claim against the diverse defendant has no real connection to the claim against the non-diverse defendant.[34]

Defendants argue that the joinder of Jackson as a defendant is fraudulent because there is no possibility that Plaintiff can prove a cause of action against him. The Eleventh Circuit has instructed that "if there is even a possibility that a state court would find the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court."[35] A defendant is not "fraudulently" joined if there is an "arguably reasonable basis for predicting that the state law might impose liability on the facts involved."[36] Put another way, if there is "even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court."[37] Accordingly, the possibility that Jackson would be held liable in a Florida court must have a reasonable basis in fact and must be more than a theoretical abstraction."[38]

---

[34] *Id. Citing* Tapscott v. MS Dealer Service Corp., 77 F. 3d 1353, 1355 (11th Cir. 1996). Defendant also claims that joinder of the detailer defendants was fraudulent because Plaintiff lacks the intent to obtain judgment against them. This basis for fraudulent joinder has been mentioned by the other district courts. *See* Samples v. Conoco, Inc., 165 F. Supp 2d 1303, 1319-1320 (N.D. Fla. 2001)(Plaintiff must have a real intention to obtain judgment against the non-diverse defendant as long as the potential for joint liability exists.) *Citing* Triggs at 1291. *See Also* Chicago Rock Island & Pac. Ry. Co. v. Schwyhart, 227 U.S. 184, 193-194 (1913).

[35] *Id. See Also* Tillman v. R.J. Reynolds Tobacco, 340 F. 3d 1277, 1279 (11th Cir. 2003).

[36] Crowe v. Coleman, 113 F. 3d 1536, 1540 (11th Cir. 1997) *Quoting* Bobby Jones Garden Apartments v. Suleski, 391 F. 2d 172, 176- 177 (5th Cir. 1968).

[37] *Id.* at 1538.

[38] Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F. 3d 305, 312 (5th Cir. 2002).

The plaintiff need not have a "winning case" against the allegedly fraudulent defendant.[39] Rather, he need only have "a possibility of stating a valid cause of action in order for the joinder to be legitimate."[40] Conversely, Defendants' burden to establish fraudulent joinder is a heavy one to bear.[41]

"While the proceeding [...] for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under F. R. Civ. P. 56(b), the jurisdictional inquiry must not subsume substantive determination."[42] It follows that the court "must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff."[43] These determinations are based on Plaintiff's pleadings at the time of removal, and on the affidavits and deposition transcripts submitted by the parties.[44]

Here, Plaintiff purports to state a claim against Defendant Jackson for his alleged violation of Florida's equal pay statute, Fla. Stat. §725.07. Specifically, he alleges that Jackson discriminated against him on the basis of his race by classifying and paying

---

[39] Triggs at 1287.

[40] *Id.*

[41] Crowe at 1538 *Citing* B, Inc. v. Miller Brewing Co., 663 F. 2d 545, 549 (5th Cir. Unit A 1981).

[42] *Id.*

[43] *Id.*

[44] Crowe at 1538. *See also* Coker at 1440 (Both parties may submit affidavits and deposition transcripts to support their positions with respect to a motion to remand.)

him as a store room manager when he should have been classified and paid as a purchasing manager.[45]

Before addressing the factual basis of Plaintiff's claim against Jackson, the inquiry begins with whether §725.07 permits suits against individuals. Defendants concede that it does,[46] but also correctly point out that the great majority of federal and state anti-discrimination statutes do not allow for individual liability.[47] Plaintiff has not offered one case, and the Court has found no case on point in its independent research, that supports a theory of individual liability under §725.07.[48] Nevertheless, as the statute itself states that no person[49] shall discriminate against any person based on race in providing equal pay for equal services, the Court will assume that individual liability could arise in such matters.[50]

---

[45] *See* Complaint, Doc. 2 at ¶10.

[46] Doc. 7, Defendants' memorandum at p. 9

[47] *See* Busby v. City of Orlando, 931 F. 2d 764, 772 (11th Cir. 1991)(no individual liability under Title VII); Smith v. Lomax, 45 F. 3d 402, 403 n.4 (11th Cir. 1995)(no individual liability under the ADEA); Mason v. Stallings, 82 F. 3d 1007, 1009 (11th Cir. 1996)(no individual liability under the ADA); Huck v. Mega Nursing Services, 989 F. Supp. 1462, 1464 (S.D. Fla. 1997) (Florida Civil Rights Act does not allow suits against individuals in their individual capacities).

[48] Plaintiff cites Munsey v. General Telephone Co. of Florida, 538 So. 2d 1328 (Fla. 2nd DCA 1989) in the section of his memorandum where he discusses individual liability under the statute, but merely states in his memorandum that the *Munsey* Court held "that the Plaintiff's claims against Fla. Stat. 725.07 were not frivolous." In fact, the court in that case *did not* address the issue of individual liability under Section 725.07, but merely affirmed summary judgment for the employer on the plaintiff's 725.07 claim based on principles of judicial estoppel arising from a federal court's prior resolution of the plaintiff's federal lawsuit asserting a wage discrimination claim under Title VII of the Civil Rights Act of 1964.

[49] The statute defines "person" as an individual, child, firm, association, joint adventure, partnership, estate, trust, business trust, syndicate, fiduciary, corporation, and all other groups or combinations. *See* Fla. Stat. §725.07, incorporating by reference Fla. Stat. §1.01(3).

[50] *See* Parks v. New York Times Co. 308 F. 2d 474, 477 (11th Cir. 1962)("[...] doubtful issues of law due to absence of definite pronouncements by the state supreme court are to be tried in the court having original jurisdiction of the case and are not to be determined in a removal proceeding."); *See Also*
(continued...)

However, even lending Plaintiff the benefit of the doubt that Florida law permits individual liability under 725.07, in piercing the pleadings and viewing the entire record as it existed at the time of removal, the undisputed facts reveal that Defendant Jackson was not an ultimate or final decision-maker with respect to Plaintiff's classification and salary. Although Jackson may have made *recommendations* to *his* superiors regarding promotions and demotions, the record makes it abundantly clear that Jackson's supervisor, Michael O'Day, was solely responsible for making final decisions about job classifications and salaries at Georgia-Pacific's Ocala facility.

As mentioned earlier, Jackson is the local manager at the Ocala facility and reports to Michael O'Day, the area manager.[51] During the first quarter of 2003, O'Day reclassified the hourly store room position then held by Plaintiff to a salaried position, and titled that position Store Room Manager.[52] Jackson was not responsible for the reclassification of Plaintiff's position, the pay grade, or its pay structure. Rather, those decisions were left to O'Day;[53] Further, O'Day has never authorized the implementation

---

[50](...continued)
Cheves v. Gips, 1994 WL 682545 at *2 (M.D. Fla. 1994)("[...] there can be no fraudulent joinder unless it is clear that there can be no recovery under the law of the state on the cause alleged, or on the facts, in view of the law as they exist when the petition to remand is heard.") *Citing* Parks at 478.

[51] Rosado Deposition, Doc. 7, Ex. A., p 66, Jackson Deposition, Doc. 7, Ex. B, p. 12, Declaration of Michael O'Day, Doc. 7, Ex. C.

[52] Doc. 7, Ex. B, p. 12, Declaration of Michael O'Day, Doc. 7, Ex. C, Jackson Deposition, Doc. 7, Ex. B, pp. 24, 26-27, 33.

[53] Jackson Deposition, Doc. 7, Ex. B, pp. 26-27, Rosado Deposition, Doc. 7, Ex. A., pp. 105-106, Declaration of Michael O'Day, Doc. 7, Ex. C.

of the higher pay grade positions of Purchasing Agent or Purchasing Manager at the Ocala facility.[54]

The only evidence that Plaintiff advances to rebut any of the evidence described above is his own affidavit[55] and an answer to an interrogatory.[56] In his affidavit, Plaintiff avers that "Jackson was the individual responsible for the decision to deny me equal pay for equal services." The interrogatory upon Plaintiff relies reads as follows:

> Q. Please state the job description and job duties of Fred Jackson, including any supervisory authority Mr. Jackson had over David Rosado.
>
> A. As Plant Manager of the Ocala facility, Jackson manages and oversees plant operations, including employee safety and environmental compliance, assures that quality process is in compliance and production output is maximized, assures that financial controls are in place and working, meets department budgets, including for the supply room, and works with the local community to assure good relations. Jackson has direct supervisory authority over the Store Room Manager in terms of scheduling exceptions, vacations, and coordinating with the Maintenance Supervisor, who oversees the daily activities of the Store Room Manager. Jackson is also involved in determining the appropriate compensation for the Store Room Manager.

In light of this evidence advanced by Plaintiff, and in view of his own testimony that he had no personal knowledge of who made the decision to reclassify the hourly store room manager position or to designate the position at a specific pay grade,[57] it is clear that Plaintiff has failed to offer any scintilla of evidence to rebut that submitted by

---

[54] Jackson Deposition, Doc. 7, Ex. B, pp. 28-29; Declaration of Michael O'Day, Doc. 7, Ex. C.

[55] *See* Plaintiff's memorandum, Doc. 5, Ex. 3.

[56] *Id.*, Ex. 5.

[57] *See* Rosado's deposition, Doc. 7, Ex. A at pp. 71, 102 & 107). In fact, Plaintiff testified that he only assumed that Jackson made the pay scale decision. *Id.* at p. 107.

Defendants, as is required to avoid a finding of fraudulent joinder. Considering the uncontested evidence of record, the Court concludes that even drawing all reasonable inferences in favor of Plaintiff, there is no reasonable basis for predicting that Florida law might impose liability on Jackson for his alleged violation of the state's equal pay statute.

### *Amount in Controversy*

As an alternative argument, Plaintiff contends that this matter should be remanded to state court because the amount in controversy is below the jurisdictional threshold set out at 28 U.S.C. §1332(a). In support of this argument, Plaintiff states that Defendants have admitted that he was paid at a pay grade 19 and earned an annual salary of $36,845.00 as a store room manager from February 2003 though May 2004. As the pay requested in his complaint was a pay grade 20, Plaintiff claims that "there is no possible way" that his compensatory damages could exceed $75,000.00. Furthermore, Plaintiff offered to settle this case in October 2004 for a mere $45.000.00.[58] The Court is unpersuaded by Plaintiff's contentions, and finds that Defendants have carried their burden of proof in demonstrating that this controversy exceeds the jurisdictional threshold.

In this case, Plaintiff's Complaint alleges an unspecified amount of damages "in excess of $15,000.00," which is the jurisdictional amount in the state's circuit court. The Eleventh Circuit has held that "where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the

---

[58] *See* Offer of Settlement, Doc. 5, Ex. 4. The letter, of course, is not determinative. *See* Burns v. Windsor, 31 F. 3d 1092 (11th Cir. 1994)(Settlement offer not determinative, but "counts for something.")

evidence that the amount in controversy more than likely exceeds the [$75,000] jurisdictional requirement."[59]

Initially, Defendants have shown that Plaintiff himself admitted in the course of his deposition that he believes he is entitled to $90,000.00 just for emotional harm and punitive damages.[60] Second, he seeks lost wages based on the difference between what he earned beginning in February 2003 and what he would have earned as a Purchasing Manager. According to O'Day, that position has a pay grade of 20, which authorizes an annual salary of up to $75,400.00.[61] Using this pay differential, Plaintiff's lost wages would amount to approximately $3,213.00 each month. That figure translates into $48,195.00 over the 15-month period covering February 2003 to May 2004. Over the 26-month period covering February 2003 through April 2005 (the date of filing the notice of removal), the lost wages differential translates to $83,538.00. Moreover, according to Plaintiff's deposition testimony, he made $3,000.00 to $4,000.00 less per year at the position he accepted in his new employment after resigning from Georgia Pacific in May 2004. Therefore, his lost wages through the date of the notice of removal would ostensibly total $161,538.00 over the 26-month period covering February 2003 through April 2005.

Based on the foregoing, it is evident that the amount in controversy exceeds the jurisdictional limit in this case.

---

[59] Tapscott v. MS Dealer Service Corp., 77 F. 3d 1353, 1359-60 (11th Cir. 1996).

[60] *See* Rosado Deposition, Doc. 7, Ex. A., p. 204. Plaintiff's assessment of his damages "deserves deference." *See* Windsor at 1095.

[61] Declarations of Michael O'Day, Doc. 7, Exs. C & H.

*Attorney's Fees*

Plaintiff seeks attorneys' fees and costs associated with his motion for remand pursuant to 28 U.S.C. §1447(c). That subsection provides that an order remanding a case to the state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." An award of attorneys' fees and costs is within the court's sole discretion.[62]

Here, because the Court has concluded that the motion to remand is due to be denied Plaintiff's request for attorneys' fees is also due to be denied.[63]

### III. **RECOMMENDATION**

In view of the foregoing, it is respectfully **RECOMMENDED** that:

(1) Plaintiff's Motion to Remand (Doc. 5) be **DENIED**; and

(2) Plaintiff's request for attorney's fees and costs (Doc. 5) be **DENIED**.

**IN CHAMBERS** in Ocala, Florida, on this 20th day of June, 2005

GARY R. JONES
United States Magistrate Judge

Copies to:
　The Honorable Wm. Terrell Hodges
　Senior United States District Judge

　Counsel of Record

---

[62] Diebel v. S.B. Trucking Company, 262 F. Supp. 2d 1319, 1333 (M.D. Fla. 2003). *See Also* Smith v. Health Ctr. of Lake City, 252 F.Supp.2d 1336, 1346 (M.D.Fla. 2003); Martin v. Mentor Corp., 142 F.Supp.2d 1346, 1349 (M.D.Fla.2001)("The award of attorney's fees and costs is discretionary with the trial court"); Publix Supermarkets, Inc. v. United Food & Commercial Workers International Union, 900 F. Supp. 419, 421 (M.D. Fla. 1995).

[63] The Court finds no merit whatsoever in Plaintiff's motion for Rule 11 sanctions, and, in any event, it does not appear that Plaintiff adhered to the safe harbor requirement set forth by the Rule.